UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

STEVEN EDWARD CRITTENDEN,

        Petitioner,

    v.

ARTHUR CALDERON,

        Respondent.

NO. CIV. S-95-1957 FCD/GGH
NO. CIV. S-97-0602 FCD/GGH

<u>DEATH PENALTY CASE</u>

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter is before the court on petitioner Steven Edward Crittenden's motion to amend the judgment entered February 23, 2005 pursuant to the court's order of that same day, adopting the magistrate judge's findings and recommendations and finally denying petitioner's habeas petition in its entirety.  Fed. R. Civ. P. 59(e).  While petitioner's habeas petition asserted numerous claims, he moves herein for relief only with respect to one claim--that he was shackled in violation of his due process

rights during both the guilt and penalty phases of his trial.
Specifically, with respect to the court's order of February 23,
2005, petitioner argues that the court committed "clear error" in
finding that he was not prejudiced during either phase by his
shackling.

During the pendency of the instant motion, the United States
Supreme Court issued its decision in <u>Deck v. Missouri</u>,No. 04-
5293, 2005 WL 1200394 (May 23, 2005).  It is petitioner's
position that <u>Deck</u> supports his motion and requires this court to
reconsider its lack of prejudice finding and to find, instead,
that petitioner was prejudiced by his shackling, at a minimum,
during the penalty phase.  Respondent, on the other hand, argues
that the court need not reach the prejudice issue because <u>Deck</u>
requires that the court reconsider its *initial* decision in May
2002 that petitioner's shackling was constitutionally in error.
(Memorandum and Order, filed May 13, 2002,("May 13 M&O")  at
37:23-24 [finding that petitioner's shackling with a waist chain
was constitutional error because the trial court failed "to at
least *consider* alternatives to physical restraints"]) (emphasis
in original).

For the reasons set forth below, the court agrees with
respondent.  <u>Deck</u> mandates that this court reconsider its initial
decision finding that the state court's failure to consider
alternatives to physical restraints resulted in constitutional
error.  Because the court finds that <u>Deck</u> teaches that the law
with respect to shackling, in particular, the requirement of
/////
/////

2

1  consideration of alternatives to shackling, was not "clearly
2  established," it reverses its finding of constitutional error.[1]
3                          **BACKGROUND**
4       In its May 13, 2002 M&O, the court found, contrary to the
5  magistrate judge's findings and recommendations, that the state
6  court erred in failing to consider alternatives to physical
7  restraints.  In reaching this finding, the court applied
8  controlling Ninth Circuit authority because, at the time, it
9  construed the case as arising pre-AEDPA. (May 13 M&O at 9-13.)
10 Thus, the court found that the Ninth Circuit required that the
11 trial court "'be persuaded by compelling circumstances that some
12 measures were needed to maintain security'" *and* "'[t]hen . . .
13 pursue less restrictive alternatives before [imposing] physical
14 restraints.'"  (May 13 M&O at 36:1-4 [quoting Castillo v.
15 Stainer, 983 F.2d 145, 147 (9th Cir. 1992)].)  Under Castillo,
16 "constitutional error is committed by a state court that shackles
17 without [considering the criteria set out by the court]."
18 Castillo, 983 F.2d at 148 (finding error because the trial court
19 did not consider "the various burdens imposed by shackling, and
20 did not weigh these burdens against other possible alternatives"
21 and "[t]he waist chain was not the court's last resort").
22      Having found constitutional error, the court directed the
23 magistrate judge to conduct an evidentiary hearing to determine
24 whether the error was prejudicial.  Rhoden v. Rowland (Rhoden I),
25 10 F.3d 1457, 1459 (9th Cir. 1993) ("A claim of unconstitutional
26 shackling is subject to harmless error analysis.")  The

27 ────────────────
28      [1]  In light of this holding the court need not reach the
   issue of prejudice.

                              3

1   magistrate judge conducted the hearing on this issue, among

2   others, December 12 and 13, 2002, and subsequently filed further

3   findings and recommendations on February 27, 2003 ("F&R").   In

4   that F&R, the magistrate judge recommended that the court deny

5   petitioner's shackling claim on the ground that, despite credible

6   evidence that eight testifying jurors saw or otherwise knew

7   Petitioner was shackled, and that his shackling was discussed by

8   the jurors briefly during a recess in the guilt phase and during

9   deliberations in the penalty phase, petitioner was not

10  prejudiced, in light of the type and strength of case presented

11  against him and the fact that the shackles were unobtrusive and

12  not blatantly obvious. (F&R at 45-49.)

13      However, prior to reaching this decision, the magistrate

14  judge asked that the court reconsider its prior finding that the

15  trial court committed error in failing to consider less

16  restrictive alternatives to shackles.   Specifically, the

17  magistrate judge asked that the court consider "whether the fact

18  of minimal shackling itself is a 'less restrictive alternative'

19  when compared to openly visible shackling, hands and feet."  (F&R

20  at 40:16-18.)   The magistrate judge maintained that under Ninth

21  Circuit authority, *less* extensive shackling can be considered an

22  alternative to extensive shackling.   (F&R at 40-42.)

23      In its order of February 23, 2005 ("Feb. 23 M&O"), the court

24  declined to reconsider its prior finding, but ultimately adopted

25  the magistrate judge's recommendation on the prejudice issue,

26  thereby denying petitioner's habeas petition on this claim.

27  (Feb. 23 M&O at 33-47.)   In reaching these conclusions, the court

28  /////

4

considered the issues under a different standard of review than
the magistrate judge.

    *After* the filing of the F&R, the United States Supreme Court
issued its decision in <u>Woodford v. Garceau</u>, 538 U.S. 202 (2003),
which both parties agreed required application of the AEDPA to
this case.  (Feb. 23 M&O at 4:26-5:2 [quoting <u>Woodford</u> which
overruled contrary Ninth Circuit authority and found that the
AEDPA's provisions apply to habeas petitions, like petitioner's,
that were filed after the AEDPA's effective date, even if a
request for counsel was filed prior to the statute's enactment].)
Under the AEDPA, a federal court may grant an application for
writ of habeas corpus only if the claim "(1) resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States, or (2) resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceeding."  28 U.S.C. § 2254(d).  While Ninth Circuit authority
may be used as persuasive authority, Supreme Court precedent is
the only "clearly established Federal law" that is controlling.
<u>Luna v. Cambra</u>, 306 F.3d 954, 960 (9th Cir. 2002).

    Significant to the pending motion, after applying this
standard, the court declined to reconsider its prior decision
finding constitutional error in the shackling of petitioner.  In
doing so, the court acknowledged that the Supreme Court was
"silent on the specific issues addressed by this case," but it
nonetheless found that the Supreme Court had addressed the use of

1 | courtroom restraints generally, and those cases[2] supplied
2 | principles establishing a governing standard as further
3 | elucidated by the Ninth Circuit in such cases as <u>Castillo</u> and
4 | <u>Gonzalez v. Pliler</u>, 341 F.3d 897, 900 (9th Cir. 2003). (Feb. 23
5 | M&O at 35-44.)  Thus, the court reaffirmed its decision finding
6 | constitutional error despite the AEDPA's more restrictive
7 | standard of review.

8 |     Now, the court considers the propriety of that decision in
9 | light of <u>Deck</u>.

10 |                         **STANDARD**

11 |     Where the court's ruling has resulted in a final judgment or
12 | order, a motion for reconsideration may be based either on Rule
13 | 59(e) (motion to alter or amend judgment) or Rule 60(b) (motion
14 | for relief from judgment) of the Federal Rules of Civil
15 | Procedure.  <u>See</u> <u>School Dist. No. 1J, Multnomah County v. ACandS,</u>
16 | <u>Inc.</u>, 5 F.3d 1255, 1262 (9th Cir. 1993).  Because petitioner's
17 | motion was filed within ten days of entry of judgment, the court
18 | will consider the instant motion under Rule 59(e).  Fed. R. Civ.
19 | P. 59(e) (requiring, unlike Rule 60(b), that all motions
20 | /////

21 |

22 |     [2]     <u>Illinois v. Allen</u>, 397 U.S. 337, 343-44 (1970)
(considering the trial of an unusually obstreperous criminal
23 | defendant, the Court held that the Constitution sometimes
permitted special measures, including physical restraints, even
"shackl[ing] and gagg[ing]... as a last resort"); <u>Estelle v.</u>
24 | <u>Williams</u>, 425 U.S. 501, 503-05 (1976) (finding that making a
defendant appear in prison clothing poses such a threat to the
25 | "fairness of the fact-finding process" that it must be justified
by an "essential state policy"); and <u>Holbrook v. Flynn</u>, 475 U.S.
26 | 560, 568-69 (1986) (finding that deployment of additional
security personnel during trial is not "the sort of inherently
27 | prejudicial practice that, like shackling, should be permitted
only where justified by an essential state interest specific to
28 | each trial").

submitted pursuant to this rule be filed within ten days of entry of judgment).

Rule 59(e) is "an extraordinary remedy to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). Absent "highly unusual circumstances," reconsideration of a final judgment is appropriate only where (1) the court is presented with newly-discovered evidence, (2) the court committed "clear error or the initial decision was manifestly unjust," or (3) there is an intervening change in the controlling law. School Dist. No. 1J, 5 F.3d at 1263.

**ANALYSIS**

In Deck, the Supreme Court reviewed the constitutionality of the use of visible shackles on a defendant in the penalty phase of a capital case. The Court concluded that the "use of visible shackles during the penalty phase" was unconstitutional "*unless* that use is 'justified by an essential state interest'-such as the interest in courtroom security specific to the defendant on trial." Deck, No. 04-5293, 2005 WL 1200394 (May 23, 2005), at *2.

The petitioner, Deck, was convicted and sentenced to death for robbing and murdering an elderly couple. At the trial, Deck was required to wear leg braces that were not visible to the jury. On appeal, the Missouri Supreme Court affirmed Deck's conviction, but reversed his death sentence. During the retrial of the penalty phase, Deck was shackled with visible leg irons, handcuffs and a belly chain. Id. at *3. His counsel objected before the jury *voir dire* began and after the jury was empaneled,

7

1  but the court overruled the objection, stating that Deck "'has

2  been convicted and will remain in leg irons and a belly chain'"

3  and "his 'being shackled takes any fear out of their minds.'"

4  The penalty phase proceeded with Deck in shackles.  Deck was

5  again sentenced to death.  <u>Id.</u>

6      On appeal, Deck claimed his shackling violated both Missouri

7  law and the Federal Constitution.  The Missouri Supreme Court

8  affirmed the death sentence, holding that the trial court had

9  properly exercised its discretion in shackling the defendant, and

10 in any event, Deck had not demonstrated he was prejudiced by his

11 shackling.  <u>Id.</u>

12     The Supreme Court's analysis in <u>Deck</u> began with the

13 preliminary question of whether the Due Process Clause of the

14 Fifth and Fourteenth Amendments to the Constitution permitted a

15 state to use visible shackles in the *guilt* phase of a criminal

16 trial.  <u>Id.</u>  The Court stated that, while "[t]he law [referencing

17 the common law and Nineteenth century cases] has long forbidden

18 routine use of visible shackles during the guilt phase,"

19 requiring instead that a state shackle a criminal defendant only

20 in the presence of a "special need," its own decisions have only

21 "*suggested* that a version of this rule forms part of the Fifth

22 and Fourteenth Amendments' due process guarantee."  <u>Id.</u> at *3-5

23 (citing <u>Allen</u>, 397 U.S. at 343-44; <u>Holbrook</u>, 475 U.S. at 568-69;

24 <u>Estelle</u>, 425 U.S. at 503) (emphasis added).

25     The Court remarked that the lower courts have interpreted

26 these "statements" from <u>Allen</u>, <u>Holbrook</u>, and <u>Estelle</u>, as "setting

27 forth a constitutional standard" governing shackles.  <u>Id.</u> at *5.

28 Namely, the courts have emphasized the importance of preserving

trial court discretion, but they have applied the "limits on that discretion described in [these cases]." <u>Id.</u>  However, the Court found that, while courts were "close to a consensus that, during the guilt phase of a trial, a criminal defendant has a right to remain free of physical restraints that are visible to the jury," absent "essential state interests such as physical security, escape prevention, or courtroom decorum." <u>Id.</u>  However, "[l]ower courts have disagreed about the specific procedural steps a trial court must take prior to shackling, about the amount and type of evidence needed to justify restraints, and about what forms of prejudice might warrant a new trial." <u>Id.</u>  The Court thus held that, in light of its own precedent and of a lower court consensus disapproving routine shackling, dating back to the Nineteenth century, "it is clear that this Court's prior statements gave voice to a principle deeply embedded in the law." <u>Id.</u>

> We *now* conclude that those statements identify a basic element of the 'due process of law' protected by the Federal Constitution.  Thus, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial.

<u>Id.</u>  (emphasis added).  The Court then proceeded to apply this same holding to the penalty phase of a criminal trial.  <u>Id.</u> at *8 (finding that "[t]he considerations that militate against the routine use of visible shackles during the guilt phase of a criminal trial apply with like force to penalty proceedings in capital cases").

Respondent interprets this holding as requiring a finding

9

that no clearly established Federal law existed prior to <u>Deck</u>
regarding the use of shackles, in general, at either the guilt or
penalty phase.  According to respondent, the Court's opinion
makes clear that the Supreme Court had not previously determined
the constitutionality of the use of visible shackles at trial.
As support, respondent points to the fact that the Court
addressed *preliminarily* the question of the constitutionality of
the use of shackles during the guilt phase and referred to its
prior decisions as "suggesting," (rather than as "holding") that
visible shackles implicated constitutional concerns.

Respondent's interpretation is unpersuasive.  There can be
clearly established Federal law under a "generalized standard".
<u>Williams v. Taylor</u>, 529 U.S. 362, 382 (2000) (explaining that
under the AEDPA, "rules of law may be sufficiently clear for
habeas purposes even when they are expressed in terms of a
generalized standard rather than as a bright-line rule"); <u>Taylor
v. Withrow</u>, 288 F.3d 846, 852 (6th Cir. 2002) ("the lack of an
explicit statement" of a particular rule by the Supreme Court "is
not determinative" of clearly established law, since "[t]he Court
has made clear that its relevant precedents include not only
bright-line rules but also the legal principles and standards
flowing from precedent").  Even though the Court in <u>Deck</u> appears,
for the first time, to announce a bright-line rule that
unjustified, visible shackling violates the Due Process Clause of
the Fifth and Fourteenth Amendments, it does not follow that no
constitutional standard previously existed.  Indeed, this court
finds <u>Deck</u> holds otherwise.

/////

1    In recounting the common law as annunciated over the past

2  several centuries, the Court found that the law has "long

3  forbidden" the unjustified use of visible shackles during

4  criminal trials.  The Court further explained that its prior

5  precedents, <u>Allen</u>, <u>Holbrook</u>, and <u>Estelle</u>, while not considering

6  the issue directly, nonetheless supported this "basic principle."

7  <u>Deck</u>, 2005 WL 1200394, at *5.  The Court stated "it is clear that

8  this Court's prior statements gave voice to a principle deeply

9  embedded in the law ... [and] that those statements identif[ied]

10  a basic element of the'due process of law' protected by the

11  Federal Constitution."  <u>Id.</u>

12    Moreover, the Court specifically found that a near consensus

13  existed among the lower courts that, absent an essential state

14  interest, a criminal defendant has the "constitutional" right to

15  remain free of physical restraints visible to the jury.  <u>Id.</u>

16  (noting that while "[l]ower courts have disagreed about the

17  specific procedural steps a trial court must take prior to

18  shackling," among other things, they have not "questioned the

19  basic principle" that unjustified, visible shackling of a

20  criminal defendant is unconstitutional).

21    Thus, this court finds that <u>Deck</u> did not establish in the

22  first instance the constitutional standard for imposition of

23  shackles.  Rather, it set forth a bright-line rule[3] that simply

24  /////

25

26    [3]    "Thus, the Fifth and Fourteenth Amendments prohibit the
use of physical restraints visible to the jury absent a trial
27  court determination, in the exercise of its discretion, that they
are justified by a state interest specific to a particular
28  trial."  <u>Id.</u>

11

1    construed prior case law, including Supreme Court authority and
2    elucidations of that authority by lower courts.

3         This conclusion, however, does not end the inquiry.  This
4    court's prior finding of constitutional error was predicated on
5    the trial court's failure to consider "less restrictive
6    alternatives to shackling."  (Feb. 23 M&O at 41.)  The pivotal
7    question remains whether this specific, procedural and
8    evidentiary requirement was clearly established Federal law at
9    the time petitioner's state court conviction became final.  In
10   Deck, the Court appears to answer this question.  When it stated
11   that "[l]ower courts have disagreed about *the specific procedural*
12   *steps* a trial court must take prior to shackling, [and] about *the*
13   *amount and type of evidence needed* to justify restraints . . . ."
14   2005 WL 1200394, at *5 (emphasis added).  The court juxtaposed
15   this finding with the "close [to] consensus" it found in the
16   lower courts regarding the general principle that the unjustified
17   imposition of visible shackles at trial violates the
18   Constitution.

19        The disagreement referenced by the Court, above, is evident
20   in reviewing the Court's lengthy string cite to cases, both
21   federal and state, which discuss procedural and evidentiary
22   requirements necessary to justify the use of shackles.  Id.  An
23   examination of those cases demonstrates that, while they do not
24   all share the same procedural and evidentiary requirements, they
25   do fall into three general categories which include both similar
26   and dissimilar requirements.

27        For example, one category of courts require, in addition to
28   a showing of a "compelling need" that the court consider less

12

1  restrictive alternatives to shackling.  See, e.g., State v.

2  Herrick, 101 P.3d 755, 757-59 (Mont. 2004) (adopting the Ninth

3  Circuit's test which requires demonstration of "compelling

4  circumstances" and consideration of less restrictive

5  alternatives); People v. Jackson, 14 Cal. App. 4th 1818, 1822-30

6  (1993) (requiring a "showing of a manifest need," and

7  consideration of less restrictive alternatives).[4]

8      A second category of courts does not require consideration

9  of lesser alternatives to shackling; instead, they require only

10  demonstration of a specific need to justify the use of shackles

11  in the particular case.  See, e.g., Harrell v. Israel, 672 F.2d

12  632, 635 (7th Cir. 1982) (per curiam) (requiring a showing of

13  "extreme need" to justify use of physical restraints on a

14  defendant at trial); Hill v. Commonwealth, 125 S.W.3d 221, 233-34

15  (Ky. 2004) (finding shackling permissible only in exceptional

16  cases where "evident danger" of escape exists or to protect

17  others from attack by the prisoner); State v. Turner, 23 P.3d

18  499, 504-05 (Wash. 2001)(en banc)(requiring shackling decisions

19  to be based on evidence that defendant poses an imminent risk of

20  escape, intends to injure someone in the courtroom, or cannot

21

22      [4]    The Court also cited Dyas v. Poole, 309 F.3d 586, 588-
   89 (9th Cir. 2002) (per curiam); however, the Ninth Circuit did
23  not consider whether shackling of the defendant in that case was
   constitutional error.  Rather, the case addressed only the
24  prejudice issue, as the state conceded the defendant's shackling
   was constitutionally in error.  As such, in Dyas there is no
25  discussion of the Ninth Circuit's test for determining whether
   the shackling of a criminal defendant is constitutional.  This
26  court assumes that the Court in Deck, meant in citing to Dyas, to
   reference the Ninth Circuit's controlling test which is clearly
27  set forth in such cases as Castillo and Gonzalez referenced
   above.  Therefore, the court places the Ninth Circuit among the
28  courts falling within this category.

behave in an orderly manner); <u>People v. Brown</u>, 358 N.E.2d 1362, 1363-64 (Ill. App. Ct. 1977) (finding that the "burden rests on the State to show the necessity of extreme physical security measures," such as to prevent escape, protect persons in the courtroom, and maintain order during trial); <u>Cooks v. State</u>, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992) (requiring "good and sufficient reasons" to shackle a criminal defendant); <u>State v. Tweedy</u>, 594 A.2d 906, 914-15 (Conn. 1991) (allowing "reasonable means of restraint" if the court finds restraints are "reasonably necessary").

Yet still a third category imposes the additional specific requirement of notice and a hearing to determine the propriety of imposition of shackles, at which time the defendant must be given an opportunity to respond to the claimed "need" to shackle him. <u>State v. Crawford</u>, 577 P.2d 1135, 1141-46 (Idaho 1978) (finding trial court's *ex parte* decision to shackle the defendant constitutional error); <u>State v. Tolley</u>, 226 S.E.2d 353, 365-69 (N.C. 1976) (requiring a hearing where the defendant is given an opportunity to respond and at which the trial judge states reasons for shackling on the record).[5]

This body of law, cited by the Court, demonstrates that, contrary to this court's prior interpretation, the law was not clearly established as to the procedural requirements which

---

[5]   Many of the cases cited above under the "second" category also expressly discuss the requirement of a hearing, <u>See, e.g.</u>, <u>Jackson</u>, 14 Cal. App. 4th at 1825, and/or the requirement of stating the reasons for shackling "on the record" <u>See, e.g.</u>, <u>Cooks</u>, 844 S.W.2d at 722.  Other courts have expressly found a hearing unnecessary so long as the reasons for shackling are stated on the record. <u>See, e.g.</u>, <u>Tweedy</u>, 594 A.2d at 915.

1  consider less restrictive alternatives or the quantum or type of
2  evidence that justify use of shackles.  Indeed, some courts
3  imposed the less restrictive alternative requirement, while most
4  did not.

5       The lack of clarity in Federal law as to the need to
6  consider alternatives to shackling is underscored in Deck,
7  itself.  Deck gives little  guidance to a trial judge on the
8  issue of what specific procedures or evidence should be
9  considered before shackling is imposed.  In fact, Deck only
10 requires a "trial court determination [on the record], in the
11 exercise of its discretion, that [shackles] are justified by a
12 state interest specific to a particular trial."  Deck, 2005 WL
13 1200394, at *5.  The question of what procedures or evidence is
14 left to the discretion of the trial judge subject to the above
15 announced standard.  Id.  The Court further noted that "[s]uch a
16 determination may of course take into account the factors that
17 courts have traditionally relied on in gauging potential security
18 problems and the risk of escape at trial."  Id. (emphasis add).
19 And certainly those factors "in a particular trial" may leave a
20 judge to consider less restrictive alternatives to shackling.
21 However, the issue before this court is whether the trial judge
22 is mandated by clearly established Federal law to consider less
23 restrictive alternatives on the record.

24      According to Deck, and contrary to petitioner's argument,
25 "justification" does not require that less restrictive
26 alternatives must be considered on the record.  Deck teaches that
27 "justification" is satisfied when the trial judge based on the
28 evidence of "essential state interest, specific to a particular

1  trial", determines shackles are necessary.  <u>Deck</u> does not

2  mention, much less expressly impose, a further requirement of

3  considering less restrictive alternatives.  Indeed, <u>Deck</u> cites

4  many more lower court cases in which the exercise of discretion

5  does not include consideration of less restrictive alternatives.

6  Thus, following the <u>Deck</u> analysis of constitutional compliance,

7  there appears to be no clearly established Federal Law regarding

8  such a requirement and certainly no clearly established Federal

9  law at the time petitioner's state court conviction became final.

10      The trial judge in this case did not consider less

11  restrictive alternatives to shackles on the record.  However, in

12  light of <u>Deck</u>, this court finds the failure to follow that

13  procedure was not contrary to, nor an unreasonable application

14  of, clearly established Federal law.  <u>Williams v. Taylor</u>, 529

15  U.S. 362, 412 (2000) (O'Conner, J., concurring)(stating that if

16  the Federal law is not clearly established at the time of the

17  state court determination, § 2254(d)(1) bars relief).

18  Accordingly, the Court must accordingly reverse its finding of

19  constitutional error.

20      The final inquiry then is whether the state court otherwise

21  complied with the clearly established Federal law as confirmed by

22  <u>Deck</u>.  Here, as described more fully in the court's May 13 M&O at

23  34-35, after conducting an evidentiary hearing, the trial court

24  ordered petitioner restrained with a waist chain tied to a

25  security chair on the basis that "there is a likelihood of escape

26  from the courtroom" or "nonconforming conduct" based on (1)

27  petitioner's escape from jail, which was pre-planned and involved

28  the taking of a hostage with a gun (later identified as a toy),

16

1  (2) his attempted escape from jail which involved the assault
2  upon a correctional officer, (3) the nature of the crimes which
3  he was charged, and (4) his physical stature.  These findings
4  were supported by testimony from the Assistant Marshal in charge
5  of courtroom security and a criminal investigator for the
6  district attorney's office.  Id.  The court also expressly noted
7  that the proposed restraints were "unobtrusive" and that every
8  attempt would be made not to let the jury see the restraints and
9  not to otherwise call attention to them.

10      Thus, unlike the case at bar, in Deck, the record contained
11 "no formal or informal findings" by the judge, nor did he refer
12 to any risk of escape or a threat to courtroom security.  Rather,
13 the judge simply stated that Deck was shackled because he "has
14 been convicted."  Deck, 2005 WL 1200394, at *9.  While the judge
15 also noted that the shackles would "take any fear out of" the
16 jurors minds, he did not explain any reason for that fear.  Id.
17 As the Court concluded, the trial judge did not explain why
18 "shackles were necessary."  Id.

19      Here, the trial judge heard testimony from two qualified
20 witnesses, who were cross-examined by defense counsel.  As set
21 forth above, the judge found that these witnesses supported the
22 state's "need" to shackle petitioner.  Thereafter the judge made
23 a clear record of his findings, explaining the reasons why he
24 found shackles were necessary, describing the type of shackles to
25 be imposed, and the efforts which would be made to prevent the
26 jury from seeing the shackles.

27      Under these facts and based on clearly established Federal
28 law at the time, this court cannot conclude that the trial judge

17

did not properly exercise his discretion to impose shackles on petitioner based upon essential state interests, specific to petitioner and his trial.

**CONCLUSION**

For the reasons set forth below, the court DENIES petitioner's motion to amend the judgment, filed February 23, 2005. However, the court modifies its order of that same day to the extent it reconsiders herein its prior finding of constitutional error in the shackling of petitioner during the guilt and penalty phases of his trial. Under the Supreme Court's decision in <u>Deck</u>, the court finds that there was no clearly established Federal law requiring consideration of less restrictive alternatives to shackling on the record at the time petitioner's state court conviction became final. The trial judge's decision to shackle defendant at both the guilt and penalty phases was compliant with clearly established Federal law, and as such, was not in violation of the Due Process Clause.

IT IS SO ORDERED.

DATED: June 24, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

18