1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11   STEVEN EDWARD CRITTENDEN,          No.  2:95-cv-01957-KJM-GGH

12               Petitioner,

13          v.                          ORDER

14   KEVIN CHAPPELL,

15               Respondent.

16

17          Respondent's motion to stay pending appeal is before the court.  (ECF 176.)
18   Respondent requests in the alternative a temporary stay to allow him to seek a stay from the Ninth
19   Circuit.  The court has decided the motion without a hearing.  For the reasons below, the court
20   DENIES respondent's motion for a stay pending appeal but GRANTS respondent's request for a
21   temporary stay.

22   I.     BACKGROUND

23          In 1989, petitioner was convicted of the following:  two counts of first-degree
24   murder, with special findings that the murders were willful and premeditated and committed
25   during the course of a robbery; and one count each of robbery, escape, and kidnapping.  A jury
26   imposed the death penalty.

27          After his conviction, petitioner filed state and federal habeas petitions in which he
28   contended, among other things, that state prosecutor Gerald Flanagan violated petitioner's

1

1    Fourteenth Amendment rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), when Flanagan

2    peremptorily struck the sole African-American juror in the venire.  The California Supreme Court

3    denied petitioner's state petitions, which included his *Batson* claim, by affirming the trial court's

4    decision in a "postcard denial."  *Crittenden v. Ayers*, 624 F.3d 943, 946, 949 (9th Cir. 2010).  The

5    California Supreme Court held the record supported the trial court's conclusion that petitioner did

6    not establish a *prima facie* case under *Batson*.  *Id.* at 952.  The magistrate judge assigned to

7    petitioner's federal petition issued the first Findings and Recommendations in this case, in two

8    volumes in 1999 and 2000.  (*See* 2002 Mem. & Order, ECF 89.)  The district judge previously

9    assigned to this case adopted in part and modified in part these Findings and Recommendations

10   and ordered the magistrate judge to hold an evidentiary hearing based on petitioner's claim that

11   the state courts' *Batson* decisions were erroneous.  (*Id.*)  At the hearing, Flanagan testified that he

12   could not remember anything, fourteen years later, about jury selection in petitioner's case.

13   *Crittenden*, 624 F.3d at 952.  Flanagan based his answers on his views after reviewing the record,

14   not on his memory.  *Id.*  In 2003, after hearing, the magistrate judge issued new Findings and

15   Recommendations.  (ECF 128.)

16          In 2005, the district judge modified some of the magistrate judge's findings but

17   adopted the magistrate judge's recommendations and denied petitioner's *Batson* claim.  (2005

18   Mem. & Order at 32, ECF 143.)  The district judge held that the California Supreme Court's

19   resolution of petitioner's *Batson* claim was contrary to established federal law under AEDPA,

20   because the California Supreme Court required petitioner to meet a higher *prima facie* burden —

21   a "strong likelihood" that Flanagan's strike was racially motivated — rather than the lesser

22   burden of "raising an inference" of discriminatory purpose.  *Crittenden*, 624 F.3d at 954.  The

23   district judge also considered *Batson's* three step analysis, and held, under *Batson*'s first and

24   second steps, that petitioner made a *prima facie* showing of discrimination and that the state

25   carried its burden of articulating a race-neutral justification for the peremptory strike.  *Id.*

26   However, the district judge denied the petition; engaging in mixed-motives analysis, he

27   determined petitioner did not carry his burden at *Batson*'s third step because he did not

28   /////

2

1  demonstrate that race played a significant role in the prosecutor's strike of juror Casey and that

2  the prosecutor would not have struck Casey had race played no role. *Id.* at 958.

3         On appeal, the Ninth Circuit affirmed most of the prior district judge's decision,

4  but vacated his conclusion that petitioner did not prevail at *Batson*'s third step in light of the

5  Ninth Circuit's decision in *Cook v. LaMarque*, 593 F.3d 801 (9th Cir. 2010), which had just come

6  down. *Id.*

7         On remand, the prior district judge referred the matter back to the magistrate

8  judge, who applied the *Cook* standard in the new Findings and Recommendations that this court

9  has reviewed. The magistrate judge concluded that Flanagan's peremptory strike was motivated

10  by "significant" but not "substantial" discriminatory intent. (F&R at 48.) On September 30,

11  2013, this court adopted in part these Findings and Recommendations, but ultimately granted the

12  petition after concluding under *Cook*'s standard that Flanagan's peremptory strike of Casey was

13  motivated in substantial part by race. (Order, ECF 173.) The court ordered the State to release

14  petitioner unless it reinitiated criminal proceedings against him within 60 days. On October 23,

15  2013 the court on its own motion extended the deadline to reinitiate proceedings by 45 days.

16  (ECF 179.)

17         Respondent filed the instant motion to stay pending appeal on October 17, 2013

18  (ECF 176), petitioner opposed on November 5, 2013 (ECF 180), and respondent replied on

19  November 13, 2013 (ECF 181).

20  II.      STANDARD

21         Federal Rule of Appellate Procedure 23(c) creates a presumption of release

22  pending appeal when a petitioner has been granted habeas relief. *O'Brien v. O'Laughlin*,

23  557 U.S. 1301, 1301 (2009); *see also Herrera v. Collins*, 506 U.S. 390, 403 (1993) ("The typical

24  relief granted in federal habeas corpus is a conditional order of release unless the State elects to

25  retry the successful habeas petitioner, or in a capital case a similar conditional order vacating the

26  death sentence."). This presumption may be overcome if a movant demonstrates that the

27  traditional factors regulating the issuance of a stay weigh in favor of granting a stay. *Hilton v.*

28  *Braunskill*, 481 U.S. 770, 776 (1987). These factors are: (1) whether the stay applicant has made

3

1     a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

2     irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

3     other parties interested in the proceeding; and (4) where the public interest lies. *Id.*

4           The first factor is the most important. *Haggard v. Curry*, 631 F.3d 931, 934–35

5     (9th Cir. 2010).  However, "[w]here the State establishes that it has a strong likelihood of success

6     on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits,

7     continued custody is permissible if the second and fourth factors in the traditional stay analysis

8     militate against release." *Hilton*, 481 U.S. at 778.  "Where the State's showing on the merits falls

9     below this level, the preference for release should control." *Id.*

10     III.      ANALYSIS

11          A.      Stay Pending Appeal

12               1.      Success on the Merits

13           Respondent argues he has a strong likelihood of prevailing on appeal due to four

14     errors this court made in its opinion granting habeas.  After considering each argument, the court

15     concludes that, although respondent is unlikely to prevail on appeal to the Ninth Circuit, he has

16     some possibility of success.

17                  a.      Nonretroactivity under *Teague*

18           Respondent argues that relief in this case is barred by the nonretroactivity

19     principles of *Teague v. Lane*, 489 U.S. 288 (1989).  (ECF 176 at 3.)  Respondent asserts that the

20     Ninth Circuit's rejection of mixed-motives analysis was a new rule imposed on the State in

21     violation of this nonretroactivity principle.  (*Id.*)  The rejection of mixed-motives is a new rule,

22     respondent contends, because at the date of finality in this case the "question whether mixed-

23     motives analysis was applicable in the *Batson* context was an open question.  Indeed, it remained

24     open in this Circuit until 2010 and is still an unresolved matter in the United States Supreme

25     Court." (*Id.*)  Respondent argues this court's conclusion that petitioner's requested relief is not

26     barred by *Teague*, because *Cook*'s holding is "consistent" with Supreme Court precedent, is an

27     incorrect *Teague* analysis.  (*Id.* (citing *Butler v. McKellar*, 494 U.S. 407, 415 (1990)).)  In *Butler*,

28     respondent asserts, the Supreme Court held the mere fact that a decision is within the "logical

1   compass" of, or is controlled by, an earlier decision is not conclusive for purposes of whether a

2   rule is new under *Teague*.  (*Id.*)

3          Petitioner counters that the Ninth Circuit, when it remanded this case instructing

4   this court to apply the *Cook* standard, implicitly rejected respondent's *Teague* argument.

5   *Crittenden v. Ayers*, 624 F.3d 943, 959 (2010).  (ECF 180 at 3.)  Petitioner also argues that the

6   *Cook* court's refusal to adopt a rule never previously applied by the Ninth Circuit or the Supreme

7   Court is not a "new rule."  (*Id.* at 4.)

8          This is the first time in this case this court has had the *Teague* issue directly before

9   it; the assigned magistrate judge did not discuss *Teague* in the instant F&Rs, to which respondent

10  did not file objections.  Under *Teague*, "new constitutional rules of criminal procedure will not be

11  applicable to those cases which have become final before the new rules are announced."  *Teague*,

12  489 U.S. at 310.  A rule is new for *Teague* purposes if it "breaks new ground," "imposes a new

13  obligation on the States or the Federal Government," or "was not dictated by precedent existing at

14  the time the defendant's conviction became final."  *Graham v. Collins*, 506 U.S. 461, 467 (1993).

15  "[A] new rule is one of 'procedure' if it impacts the operation of the criminal trial process, and a

16  new rule is one of 'substance' if it alters the scope or modifies the applicability of a substantive

17  criminal statute."  *Webster v. Woodford*, 369 F.3d 1062, 1068 (9th Cir. 2004).

18         Respondent has some likelihood of succeeding on the merits of this argument.

19  The 2010 *Cook* court's explicit rejection of mixed-motives, while consistent with precedent that

20  existed at the time petitioner's conviction became final in 1995, arguably was not dictated by it.

21  By 1995, neither the Supreme Court nor the Ninth Circuit had held that a court may not apply

22  mixed-motives analysis at *Batson*'s third step.  The Supreme Court recently stated that it is an

23  open question whether mixed-motives analysis has a place in the *Batson* inquiry.  *Snyder v.*

24  *Louisiana*, 552 U.S. 472, 485 (2008) (noting the Court had not previously applied the mixed-

25  motives rule in a *Batson* case, and that it "need not decide here whether that standard governs in

26  this context").

27         In addition, at the time the *Cook* decision came down, five other circuit courts had

28  adopted the mixed-motives approach.  *Cook*, 593 F.3d at 814 (citing *Gattis v. Snyder*, 278 F.3d

5

1   222, 232–35 (3d Cir. 2002); *Wallace v. Morrison*, 87 F.3d 1271, 1274–75 (11th Cir. 1996) (per

2   curiam); *Jones v. Plaster*, 57 F.3d 417, 420–22 (4th Cir. 1995); *United States v. Darden*, 70 F.3d

3   1507, 1530–32 (8th Cir. 1995); *Howard v. Senkowski*, 986 F.2d 24, 27–30 (2d Cir. 1993)).  Given

4   this circuit support, there is a colorable argument that *Teague*'s "new rule" principle, which

5   validates "reasonable, good-faith interpretations of existing precedents . . . even though they are

6   shown to be contrary to later decisions," bars the relief petitioner seeks here.  *Butler*, 494 U.S. at

7   414.

8          However, as petitioner points out, the Ninth Circuit previously has implicitly

9   rejected respondent's *Teague* argument, which respondent raised on appeal, when it remanded

10  this case and instructed this court to consider only the very narrow question of whether petitioner

11  met his burden under the *Cook* standard at *Batson*'s third step.  *See Crittenden*, 624 F.3d at 959

12  ("We therefore leave it to the district court to make a step three determination in the first instance,

13  unconstrained by its prior findings under the pre-*Cook* standard.").  Moreover, the *Cook* court

14  implicitly concluded that rejection of mixed-motives analysis was in fact dictated by precedent.

15  *See* 593 F.3d at 814 (mixed-motives analysis was "contrary to the weight of Ninth Circuit and

16  Supreme Court precedent").  Because the Ninth Circuit's *Crittenden* opinion is binding on this

17  court, this court concludes respondent has only a small possibility of prevailing on appeal to the

18  Circuit on this argument.

19                         b.     Credibility Determinations

20         Respondent next argues that this court erred in overturning the credibility-based

21  factual findings of the magistrate judge without conducting an independent hearing.  (ECF 176 at

22  6.)  Under *Johnson v. Finn*, 665 F.3d 1063, 1074 (9th Cir. 2011), respondent contends, a district

23  court must conduct a hearing if it rejects a magistrate judge's factual findings at *Batson*'s step

24  three.  (*Id.*)  Because the magistrate judge concluded that any "'bias' harbored by the prosecutor

25  'was not "substantial" in terms of the motivating factor at the time of the exercise of the

26  peremptory challenge,'" respondent asserts this court erred in finding that bias was substantial.

27  (ECF 176 at 7–8.)  Respondent claims the parties in this action do dispute facts established at the

28  magistrate judge's evidentiary hearing: petitioner disputes the factual finding as to that the

                                              6

1   prosecutor was not substantially motivated by racial bias, while respondent disputes the factual

2   finding as to whether the prosecutor harbored any racial bias whatsoever.  (*Id.* at 8.)  Finally,

3   respondent argues that even disputing the inferences drawn by the magistrate judge from the

4   entirety of the record is a dispute with the ultimate factual findings.  (*Id.*)

5         Petitioner counters that this court correctly determined that "the facts necessary to

6   the *Batson* issue are not in dispute, therefore it 'need not conduct a *de novo* evidentiary hearing.'"

7   (ECF 180 at 4.)  The court did not run afoul of *Johnson*, petitioner asserts, because in the case at

8   bar the prosecutor never articulated a race-neutral reason at *Batson* step two; rather, this reason

9   was reconstructed from circumstantial evidence.  (*Id.*)  Petitioner contends the only credibility

10   finding by the magistrate judge concerned the prosecutor's systemic practices and rating system

11   and his inability to recall anything about jury selection in this case.  (*Id.* at 5.)  Petitioner argues

12   this court implicitly accepted the magistrate judge's credibility determinations by accepting that

13   the prosecutor met his step two burden and by not making a single reference to credibility in the

14   order.  (*Id.* at 4–5.)

15         Respondent has little likelihood of succeeding on this argument.  *Johnson* is

16   distinguishable from the instant case.  In making its relevant holding in *Johnson*, the Ninth Circuit

17   quoted the Supreme Court's statement that "[i]n the typical peremptory challenge inquiry, the

18   decisive question will be whether counsel's race-neutral explanation for a peremptory challenge

19   should be believed. . . . the best evidence often will be the demeanor of the attorney who

20   exercises the challenge."  665 F.3d at 1073 (citing *Hernandez v. New York*, 500 U.S. 352, 365

21   (1991)).  Therefore, a district judge "who rejects a magistrate judge's finding as to the credibility

22   of a prosecutor's explanation for a peremptory strike" should hold an independent hearing to see

23   the prosecutor testify in person.  *Id.*

24         Unlike in *Johnson*, the prosecutor in this case had no independent recollection

25   about why he struck Casey.  *Compare Johnson*, 665 F.3d at 1067 *with Crittenden*, 624 F.3d at

26   952.  Flanagan testified at the 2003 hearing before the magistrate judge based upon his reading of

27   the record, not based upon his memory.  *Crittenden*, 624 F.3d at 952.  The prior district court

28   judge who reviewed the magistrate judge's 2003 Findings and Recommendations concluded that

7

1    respondent had met his burden at *Batson* step two because "evidence in the record . . . substituted

2    for an actual 'articulation'" of a race-neutral reason."  (2005 Mem. & Order at 14–16; *see also*

3    Order at 18; *Crittenden*, 624 F.3d at 952–53.)  The district court ultimately found that "'race

4    played a significant part in the prosecutor's decision to remove Casey,'" but found no *Batson*

5    violation after conducting a mixed-motives analysis.  *Crittenden*, 624 F.3d at 959.  The Ninth

6    Circuit affirmed the district court's finding at *Batson* step two but vacated and remanded the

7    finding at step three so that the district court could reconsider that step without using mixed-

8    motives analysis.  *Id.*  Therefore, unlike in *Johnson*, the prosecutor's credibility as to his

9    articulated race-neutral reason was never at issue in this case: evidence in the trial record, not the

10    prosecutor himself, provided the basis for articulation of a race-neutral reason.  To the extent it is

11    not clear from the court's prior order, petitioner is correct that this court in fact accepted the

12    magistrate judge's credibility determinations.

13          Furthermore, in *Johnson*, the court summarily rejected the magistrate judge's

14    thoroughly documented "determination that the prosecutor's asserted race-neutral reasons for

15    striking [the juror] were not his genuine reasons for doing so."  *Id.* at 1067.  Here, in contrast, the

16    magistrate judge concluded, and this court accepted, that Flanagan's racial bias in striking Casey

17    was "significant."  The court drew a different conclusion as to the legal significance of that bias

18    based upon its *de novo* review of the record and its application of  the *Cook* standard.

19          Nor does this court believe it offended the spirit of *Johnson*.  The court did not rely

20    upon its own credibility determinations in reaching its holding, meaning that an independent

21    hearing would have been only redundant.  The court accepted the magistrate judge's credibility

22    and factual findings based on that judge's evidentiary hearing, including Flanagan's explanation

23    of his system for conducting voir dire.  (*See, e.g.*, Order at 6 ("Flanagan testified that he marked

24    '56' on jurors' questionnaires when their answer to question 56, which asked about death penalty

25    views, caused concern.").)  Specifically, the court relied on the following evidence:

26                  i.       The Question 56 Annotation

27          The court adopted the magistrate judge's findings on this factor in full.  (Order at

28    6.)

1              ii.      The Baseless For-Cause Challenge

2              The court adopted the magistrate judge's finding that Flanagan's baseless for-

3      cause challenge of juror Casey was evidence of discriminatory animus.  (*Id.* at 6–7.)  The court

4      disagreed with the magistrate judge's conclusion, which the magistrate judge based not on the

5      evidentiary hearing record but on the state trial court record, that juror Moreno also was

6      challenged for cause because of Moreno's general death penalty views.  (*Id.* at 8.)  Therefore, this

7      court awarded more weight than the magistrate judge did to Flanagan's for-cause challenge of

8      Casey based solely upon this court's *de novo* review of the trial court record.  (*See id.* at 7–8.)

9              iii.     Flanagan's Peremptory Strike in a Prior Capital Case

10             The magistrate judge did not speak to this factor; the court granted it slight weight

11     based on the record of Flanagan's actions in the prior case.  (*Id.* at 8–9.)

12             iv.      Four-X Rating of Juror Casey

13             The court adopted the magistrate judge's finding that the rating of juror Casey also

14     was evidence of Flanagan's discriminatory motive.  (*Id.* at 9.)  The court granted this factor more

15     weight than did the magistrate judge based on a different assessment of the logical implications of

16     the four-x rating and a review of the record as a whole.  (*Id.* at 10.)  The court reasoned that

17     giving Casey such a poor rating meant striking her was a foregone conclusion because a *de novo*

18     review of the record showed that Flanagan rated only one other juror so poorly.  (*Id.*)

19             v.       Prosecutor's Manner of Questioning

20             The court disagreed with the weight the magistrate judge assigned to the manner in

21     which Flanagan questioned Casey, as reflected by the trial transcript.  (*Id.*)  The magistrate judge

22     concluded Flanagan's use of the term "gas chamber" when questioning Casey was neutral

23     because the trial judge had used the term with another juror.  (*Id.*)  After conducting its *de novo*

24     review of the state trial court voir dire record as a whole, the court concluded that Flanagan's

25     manner of questioning weighed in favor of a finding of racial motivation.  (*Id.* at 11.)

26             vi.      Comparison of Ratings of Jurors Casey, Clark and Krueger

27             The court found a comparative analysis of these three jurors, based upon a *de novo*

28     review of the trial court record, provided strong evidence of discriminatory motive.  (*Id.*)  The

9

1    magistrate judge had concluded, based upon his own analysis of the state trial court record, that

2    Flanagan's rating of juror Clark was so anomalous that any comparison with Clark was unhelpful

3    and that Krueger deserved her higher rating because she proved herself a more prosecution-

4    friendly juror at voir dire.  (*Id.* at 12.)

5                              vii.    Comparison with Other Jurors Who Expressed Anti-Death

6                                     Penalty Views

7            The court adopted the magistrate judge's findings on this factor in full.  (*Id.* at 14.)

8                              viii.   Comparison with Other Jurors Who Received "X" Ratings

9            The court implicitly adopted the magistrate judge's findings on this factor by

10    finding it benefited neither party.  (*Compare id.* at 14 ("[The magistrate judge] ultimately

11    concluded that this factor favors both petitioner and respondent."), *with id.* at 15 ("The court finds

12    this factor on balance benefits neither party.").)

13                              ix.    Makeup of the Jury at the Time of the Peremptory

14                                     Challenge

15            The court adopted the magistrate judge's findings gleaned from his analysis of the

16    trial court record that the jury was pro-prosecution when Casey was struck.  (*Id.* at 16.)  However,

17    the court did not grant this factor as much weight in favor of respondent as the magistrate judge

18    did only because the magistrate judge's conclusion about how much weight this factor should be

19    given rested upon an uncertain logical assumption.  (*See id.* ("The assumption is that because a

20    juror comparison reveals that Casey objectively deserves to be in the X category, Flanagan

21    himself actually was motivated to put her in that category for nondiscriminatory reasons.  This

22    assumption is uncertain in part because jurors Clark and Krueger also apparently deserved to be

23    in the 'X' category according to Flanagan's own system, as much as Casey did, but they were not

24    placed there.").)

25            In sum, given the procedural posture and facts of this case, this court was not

26    required to have conducted an independent evidentiary hearing.  *Cf. Orand v. United States*,

27    602 F.2d 207, 208 (9th Cir. 1979) ("If neither party contests the magistrate judge's proposed

28    /////

1    findings of fact, the court may assume their correctness and decide the motion on the applicable

2    law.").  Respondent has little likelihood of prevailing on his credibility arguments.

3                          c.        Purposeful Discrimination

4                Respondent contends this court erred in holding that a *Batson* violation may be

5    found based on the existence of unconscious discrimination.  (ECF 176 at 9.)  Respondent takes

6    issue with two lines of the court's opinion.  First, the court, citing Justice Marshall's concurrence

7    in *Batson*, stated that "discriminatory intent may be conscious or unconscious."  (Order at 18.)

8    Second, the court found that "Flanagan was motivated, consciously or unconsciously, in

9    substantial part by race."  (*Id.* at 19.)

10               Respondent is unlikely to succeed on the merits of this argument.  The totality of

11   the court's opinion leaves no doubt that it concluded Flanagan's strike of Casey was purposeful

12   discrimination.  The court undertook "a sensitive inquiry into such circumstantial and direct

13   evidence of intent as may be available," *Batson*, 476 U.S. at 93, explicitly finding that Flanagan

14   was motivated in substantial part by race after conducting side-by-side juror comparisons and

15   weighing the cumulative evidence including Flanagan's baseless for-cause challenge of Casey.

16   (Order at 19–21.)  The recitation of the evidence the court considered, set forth above, belies

17   respondent's argument that this court could have found non-purposeful discrimination sufficient

18   to make out a *Batson* violation.  Moreover, the court several times explicitly articulated its

19   holding that Flanagan engaged in purposeful discrimination.  (*See, e.g.*, Order at 20 ("In the

20   absence of a credible race-neutral reason, racially discriminatory impetus provides the only

21   motivation for the strike."); *id.* at 21 ("Additionally, viewed cumulatively, the evidence supports

22   the conclusion that Flanagan's race-neutral reason for striking Casey was pretextual and that race

23   substantially motivated the strike.").)

24               Respondent misinterprets the court's reference to conscious or unconscious

25   motivation, which the court included to emphasize the inscrutability of Flanagan's state of mind

26   in 1989 when he rated and struck Casey.  The court held that the totality of the record shows

27   purposeful discrimination in the use of a peremptory strike: Flanagan struck Casey because of her

28   race.  But the court cannot, and does not, address why Flanagan was motivated by race.  The

11

1   court cannot say whether Flanagan thought Casey would be partial to petitioner "because of their

2   shared race," *Batson*, 476 U.S. at 97, or if he was influenced solely by "conscious or unconscious

3   racism," *id.* at 106.  And it need not.  The court's reference to the potential for unconscious

4   racism was a considered observation to clarify that the court in no way sought to impugn

5   Flanagan's character as it undertook the *Batson* inquiry in light of *Cook* in this case.  *Cf. Johnson*

6   *v. Love*, 40 F.3d 658, 667 (3d Cir. 1994) ("Courts frequently are required to draw inferences from

7   circumstantial evidence regarding a decision-maker's state of mind, however . . . .").  Respondent

8   is not likely to prevail on this argument.

9             d.      Conflict with the Ninth Circuit's Prior Decision in this Case

10            Respondent maintains it was error for this court to rely on two factors previously

11   rejected by the Ninth Circuit to find purposeful discrimination.  (ECF 176 at 10.)  First, the Ninth

12   Circuit rejected petitioner's argument that Flanagan's use of the term "gas chamber" was

13   evidence of discrimination.  (*Id.*)  Second, the Ninth similarly rejected as such evidence

14   Flanagan's strike of an African-American juror in a prior capital trial.  (*Id.* at 11.)

15            Respondent is not likely to prevail on this argument.  The Ninth Circuit, when

16   remanding this case to this court, gave the following direction: "We therefore leave it to the

17   district court to make a step three determination in the first instance, unconstrained by its prior

18   findings under the pre-*Cook* standard."  *Crittenden*, 624 F.3d at 959.  Moreover, the Ninth did not

19   reject the two factors on which respondent relies.  In a footnote, it simply concluded these factors

20   "do not add significantly to [petitioner's] prima facie case."  *Id.* at 957 n.4.  This court considered

21   these two factors in the context of the trial record at *Batson*'s third step as required.  *Id.* at 958 n.5

22   ("At step three of the *Batson* analysis, the district court considers the totality of the evidence and

23   determines whether or not the plaintiff has proved purposeful racial discrimination by a

24   preponderance of the evidence.  There, the court should consider all of the relevant

25   evidence . . .").

26            Considering all of respondent's arguments under the success on the merits prong,

27   the court concludes respondent has shown only a small likelihood of prevailing on the merits.

28   /////

1             2.        Respondent's Irreparable Injury

2             Respondent contends the State has a strong interest in favor of continued custody

3 due to the nature of Crittenden's capital sentence.  (ECF 176 at 12.)  Further, petitioner would

4 pose a danger to the public and a flight risk, and moving petitioner to a county jail from a more

5 secure prison while he is being retried poses an additional risk as he has a history of attempting to

6 escape from county jails.  (*Id.*)  Finally, respondent argues the State would be harmed by the

7 waste of resources that would be spent to retry petitioner while this case is pending on appeal in

8 the event the Ninth Circuit reverses this court's decision.  (*Id.* at 13.)

9             Petitioner counters that he does not seek release from prison pending the outcome

10 of appeal; he seeks only to be retried.  (ECF 180 at 7.)  At the same time, petitioner avers his

11 escape attempts occurred over 24 years ago when he was "very young"; he argues security at the

12 county jail has also improved since petitioner was last housed there.  (*Id.*)  Petitioner asserts the

13 state will not waste resources on retrying petitioner, for two primary reasons.  First, respondent

14 will not succeed on appeal.  (*Id.* at 8.)  Second, this court has ordered that respondent initiate

15 proceedings to retry petitioner within 105 days; it has not ordered that petitioner be retried within

16 that time.  (*Id.*)  Retrying petitioner will take years, petitioner argues, in part because his case is a

17 capital case and complex, and because new counsel will have to be located as his former lead

18 counsel at trial has been disbarred.  (*Id.*)  Additionally, the penalty phase of petitioner's retrial

19 will include investigation of his conduct during the past 24 years he has been incarcerated on

20 death row.  (*Id.*)  Consequently, petitioner asserts it is highly unlikely the Ninth Circuit will

21 decide respondent's appeal before petitioner is retried.  (*Id.*)

22             Given that petitioner does not seek release from custody, the court finds

23 respondent will suffer only slight irreparable injury if a stay pending appeal is not granted.

24 Moreover, as is to be expected, the State intends to retry petitioner rather than permit his release.

25 According to respondent, the District Attorney of Butte County "intends to retry Petitioner if

26 necessary" and has already "initiated the process to secure Petitioner's presence by November 27,

27 2013 for arraignment."  (Decl. of Eric L. Christoffersen ¶ 5, Resp.'s Req. for Extension of Time

28 to Re-Initiate Criminal Proceedings, ECF 177.)  Second, the State has not identified a clear

1   custodial or rehabilitation interest in keeping petitioner in prison as opposed to jail, to which

2   respondent contends petitioner will be moved for retrial.  *See Hilton v. Braunskill*, 481 U.S. 770,

3   777 (1987) ("The State's interest in continuing custody and rehabilitation pending a final

4   determination of the case on appeal is also a factor to be considered; it will be strongest where the

5   remaining portion of the sentence to be served is long, and weakest where there is little of the

6   sentence remaining to be served.").  Petitioner will be in the State's custody either way.

7        The court acknowledges the State will experience some irreparable injury in the

8   form of resources expended in retrying petitioner if the Ninth Circuit ultimately reverses this

9   court's grant of habeas relief.  *Cf. Glover v. Birkett*, No. 07-CV-11912, 2011 WL 1869404, at *3

10  (E.D. Mich. May 16, 2011) (considering the State's resources under the public interest prong).

11       This prong slightly favors granting a stay.

12            3.       Petitioner's Irreparable Injury

13       Respondent argues that the denial of a stay will not impact petitioner's custody

14  status because the State intends to retry him if a stay is granted.  (ECF 176 at 14.)  Moreover, the

15   "guilt case" against petitioner is extremely strong, respondent contends; therefore, there is a

16  "substantial likelihood" he will be convicted again.  (*Id.*)

17       Petitioner counters that reconvicting him will be no slam dunk.  (ECF 180 at 8.)

18  He says it is far from certain that a retrial will result in the same verdicts—guilty of first degree

19  murder with special circumstances and a death sentence—in part because the original jury needed

20  14 hours to reach a verdict and 20 hours to reach a death verdict.  (*Id.* at 9.)  Petitioner also has an

21  interest that his trial, concerning conduct that occurred more than 26 years ago, not be

22  unnecessarily delayed.  (*Id.*)

23       Petitioner will suffer only slight irreparable injury if a stay is granted.  Petitioner

24  concedes he will not be released from custody whatever the outcome of this motion, and he does

25  not seek release.  Whether petitioner is likely to be reconvicted has little bearing on any injury

26  petitioner may suffer if a stay is granted.

27       This prong is essentially neutral in this court's view.

28  /////

14

1          4.       Public Interest

2          Respondent argues the "interests of comity and federalism inherent in federal

3  habeas corpus practice weigh in favor of a stay." (ECF 176 at 14.)  He maintains that *Younger*

4  abstention "recognizes the problems that can arise with parallel legal proceedings conducted by

5  two separate sovereigns." (*Id.* (citing *Younger v. Harris*, 401 U.S. 37, 44–45 (1971)).)

6  Respondent asserts, therefore, he should not be required to retry petitioner until the federal habeas

7  process is completed. (*Id.*)  He argues the public policies underlying *Younger* abstention apply

8  here because the State should not be required to reinitiate state criminal proceedings when the

9  federal habeas proceedings once played out in full may render such State actions moot. (*Id.* at

10  15.)

11          Petitioner responds that the public interest does not favor a stay because society

12  has an interest in the timely resolution of criminal cases. (ECF 180 at 9 (citing *Flanagan v.*

13  *United States*, 465 U.S. 259, 264 (1984)).)  He says respondent's reliance on *Younger* is

14  misplaced, because that doctrine holds that a federal court should rarely grant an injunction to

15  stay a state criminal proceeding. (*Id.* at 10 (citing *Younger*, 401 U.S. at 40).)  Petitioner asserts he

16  is not requesting such an injunction; rather, he is requesting this court not stay its order granting

17  habeas relief so that the State can reinitiate criminal proceedings against him promptly. (*Id.*)

18          There is some irony in respondent's urging this court to stay a state criminal

19  proceeding under a doctrine that forbids this court from staying state criminal proceedings except

20  in limited circumstances not present here.  Comity and federalism are of course important

21  considerations in our system of dual sovereigns.  But respondent's *Younger* argument is not

22  compelling in light of this court's conclusion that the State is not likely to prevail on appeal to the

23  Circuit.  On balance, the court finds the public interest is best served, however minimally after the

24  passage of decades, by retrying petitioner as soon as possible.  *Cf. Flanagan*, 464 U.S. at 264.

25          This factor slightly disfavors granting a stay.

26          5.       Conclusion

27          The court declines to issue a full stay pending appeal because respondent has

28  shown neither a strong likelihood of success on appeal to the Ninth Circuit nor a substantial case

1    on the merits. *See Hilton*, 481 U.S. at 778 ("Where the State establishes that it has a strong

2    likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a

3    substantial case on the merits, continued custody is permissible if the second and fourth factors in

4    the traditional stay analysis militate against release. Where the State's showing on the merits falls

5    below this level, the preference for release should control.") (internal citations omitted).

6    Respondent has shown he has only some likelihood of prevailing on appeal on his *Teague*

7    argument. Moreover, while the second factor (irreparable injury to respondent) slightly favors

8    granting the stay, the fourth factor (the public interest) does not. *See id.*

9           B.      Request for Temporary Stay

10                  Respondent requests in the alternative that the court grant a temporary stay to

11   allow him to seek a stay from the Ninth Circuit. (ECF 176 at 15.) Petitioner has not stated any

12   opposition. In light of respondent's possibility of success on his *Teague* claim and the risk of

13   wasting State resources, the court grants this request. *See Elliot v. Williams*, No. 2:08-CV-00829-

14   GMN, 2011 WL 5080169, at *9 (D. Nev. Oct. 25, 2011) (granting temporary stay due to

15   potentially wasted resources if the court's habeas ruling were overturned); *Haggard v. Curry*, No.

16   C 06–07658 SI, 2010 WL 3366197, *3 (N.D. Cal. Aug. 25, 2010) (granting state's request for a

17   temporary stay to enable it to seek a stay from the Ninth Circuit).

18   IV.    CONCLUSION

19                  For the reasons stated, respondent's motion is DENIED, but his request for a

20   temporary stay is GRANTED.

21                  IT IS SO ORDERED.

22   Dated:  December 24, 2013.

23

24   _____

25   UNITED STATES DISTRICT JUDGE

26

27

28